**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BRUCE W. GRAHAM**
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JACOB STIDHAM, | ) | |
| | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1211-CR-939 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1108-FB-14

**December 31, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Jacob Stidham challenges the trial court's decision permitting the State to charge him with Rape,[1] a class B felony, against him two days before his trial was set to commence on other criminal charges. Stidham also claims that the evidence was insufficient to support the convictions for rape and Confinement,[2] a class C felony, as to A.T., one of the victims.

Stidham maintains that the rape charge filed just prior to trial prejudiced his substantial rights, that the rape conviction must be set aside because the evidence established that A.T. had no memory of engaging in sexual intercourse or of being forced to have sexual intercourse or of being so impaired that she was unable to consent to sexual intercourse. Stidham further contends that the evidence established that there was no evidence presented at trial that Stidham had confined A.T., or that the alleged confinement was separate and apart from the rape.

We find that Stidham has waived the issue regarding the State's filing of the rape charge and that his rights were not substantially prejudiced. The State also presented sufficient evidence permitting the jury to conclude that Stidham raped A.T. We need not address A.T.'s challenge to the sufficiency of the evidence regarding the confinement charge because the trial court merged the rape and confinement convictions and did not sentence Stidham for confining A.T. Thus, we affirm the judgment of the trial court.

---

[1] Ind. Code § 35-42-4-1.

[2] I.C. § 35-42-3-3.

2

On March 5, 2011, R.M. and A.T. were in the Chauncey Hill area in Lafayette to celebrate a friend's birthday. After drinking at some bars and eating at a fast food restaurant, R.M. began calling for a taxi cab on her cell phone to take her and A.T. back to where they were staying.

At approximately 3:30 a.m., while R.M. and A.T. were waiting for the cab, Stidham pulled up in a white SUV. R.M. assumed that Stidham was the driver from the taxi cab company. Both girls entered the SUV and R.M. noticed that A.T. had "passed out" in the back of Stidham's vehicle. Tr. p. 86. At some point, Stidham stopped the vehicle and ordered R.M. to perform fellatio on him. When R.M. refused, Stidham grabbed R.M.'s head and pulled her close to him.

R.M. escaped Stidham's grasp, called 911, and told the dispatcher that her friend had "passed out" in the back of Stidham's vehicle. Ex. 2. While R.M. was talking with the dispatcher, Stidham removed R.M.'s seatbelt, opened the passenger side door, and shoved her out of the vehicle. Stidham then sped away with A.T. still in the back seat.

R.M. then ran to a nearby residence, where she again called 911 and attempted to call A.T.'s cell phone. The police were unable to find Stidham's vehicle in light of the description that R.M. had given them.

At approximately 6:29 a.m., A.T. staggered into a Speedway Gas Station (Speedway) on Old US 231 South in Lafayette. A.T. was missing her coat and purse, so

she used the gas station's telephone to contact her family. A.T. noticed that her bra was unhooked and was experiencing soreness in her vaginal area.

Detective Travis Dowell of the Tippecanoe County Sheriff's Department arrived at the Speedway and observed that A.T. was cold, upset, and crying. A.T. was transported to the hospital where Shannon Luper, a certified Sexual Assault Nurse Examiner, performed a rape test on A.T. and recovered a quantity of DNA from A.T.'s right buttock. Luper also found white secretion and several red abrasions in A.T.'s vagina, and some bruises on A.T.'s right knee and forearms.

The police subsequently tested the DNA and found Stidham's DNA on record that matched that which was recovered from A.T. Thereafter, on June 21, 2011, police officers obtained a search warrant that authorized them to obtain a DNA exemplar from Stidham. The DNA matched that which was recovered near A.T.'s right buttock. The police also executed a search warrant for Stidham's apartment, where A.T.'s digital camera was discovered. The camera revealed digital photos of A.T.s activities on the night of the assault.

Stidham was arrested, and shortly thereafter, he called a friend, Benita Allen, and asked her to move a blue container from another apartment where he occasionally resided. Stidham also requested that Allen not tell the police where he lived. However, following Stidham's arrest and release on bond, the police learned about the other residence. Thus, they obtained a search warrant for this residence and discovered a

4

newspaper article about the assault on R.M. and A.T. The officers also found several articles of female clothing in a tub.

On August 10, 2011, the charges that were ultimately filed against Stidham included:

> Count I:   Confinement, a class C felony as to R.M.
> Count II:   Confinement, a class C felony as to A.T.
> Count III:  Receiving Stolen Property that belonged to either R.M. or A.T., a class D felony
> Count IV:  Public Indecency, a class A misdemeanor
> Count V:   Battery, a class B misdemeanor against R.M.
> Count VI:  Attempted Deviate Conduct, a class B felony against R.M.
> Count VII: Rape, a class B felony against A.T.

Appellant's App. p. 29-40, 103-04.

The trial court set Stidham's bond at the initial hearing on August 12, 2011. A subsequent bond reduction revocation hearing was conducted on August 30, 2011. At that hearing, the State presented evidence regarding Stidham's history of sexual offenses that included a case in California.

In that case, Stidham was arrested for confinement, kidnapping, sodomy, and rape. It was also determined that Stidham committed those offenses in the same manner as those here, in that he was at a bar, picked up a woman, drove her to a secluded area, and raped her. There was also evidence that Stidham had been previously stopped by police who noticed that he had been driving around various parking lots and bar areas, but never stopped to pick anyone up.

5

Several days after Stidham had attacked R.M. and raped A.T., Stidham told a friend, Beau Kerkhoff, what he had done to A.T. and R.M. During that conversation, Stidham admitted having sexual intercourse with one of the women. Following the hearing, Stidham was ordered to be held without bond. The police took several statements from Kerkhoff and the State's discovery disclosure of October 21, 2011, advised that the police had taken a total of three statements from Kerkhoff regarding the incident.

Kerkhoff did not inform the police about Stidham's conversation regarding sexual intercourse with one of the women until September 4, 2012. Stidham filed a demand for a speedy trial on July 27, 2012. Thus, the trial court set the matter for a jury trial on September 25, 2012. The State filed its second supplemental discovery disclosure on September 12, 2012.

On September 14, 2012, the State filed a motion to add Count VII, rape, a class B felony, alleging that Stidham had raped A.T. Although the trial court granted the motion on September 18, Stidham objected to the State's filing of the additional charge. At a hearing conducted that same day, Stidham's counsel specifically informed the trial court that he did not want to "inconvenience" the trial court with a continuance. Supp. Tr. p. 29. More specifically, Stidham's defense counsel commented that "we don't want to glea[n] from [the deputy prosecutor's] comments that we are asking for a continuance. We are not. My client is sitting in jail. We want to go to trial and get this disposed of." Id. at 32-34.

The trial court conducted the initial hearing on September 25, 2012, on the rape charge, and the trial commenced that same day. R.M. testified that in the early morning of March 6, 2011, she made approximately five calls for a taxi-cab to take her and A.T. home from a restaurant in Lafayette. R.M. also described A.T.'s state of intoxication that morning, explaining that "she was definitely impaired. She was not walking straight. . . . I did not feel that she was capable of making a decision." Id. at 120.

A.T. testified that she remembered drinking alcohol that evening, but had no recollection of the events after her fourth or fifth drink. Id. at 152-53. A.T. testified that she only remembered going to the first bar after dinner, that she did not remember leaving, did not recall going to other bars or the restaurant, and did not remember entering Stidham's vehicle. A.T. testified that the next thing she remembered was waking up outside the Speedway and not knowing where she was.

A.T. also denied that she gave Stidham permission to have her camera, did not have consensual sexual intercourse with Stidham, and testified that she was unaware that Stidham had sexual intercourse with her. Luper, the sexual assault nurse who examined her, testified that A.T. sustained vaginal injuries, and that the injuries were most likely sustained during nonconsensual sexual intercourse.

Kerkhoff testified about the conversation that he had with Stidham a short time after the attacks where Stidham mentioned that he had picked up two women from a bar, had dropped one of them off, and had sexual intercourse with the other.

7

The State introduced evidence of Stidham's cell phone records that placed him in the area where the attacks occurred on March 6, 2011, between 12:55 a.m. and 3:00 a.m., leaving the Lafayette area at 5:11 a.m., and being near the intersection of U.S. 231 and U.S. 52 near Otterbein at 5:20 a.m.

R.M.'s cell phone records placed her in the same area until 3:00 a.m. on March 6 and in an area near U.S. 31 after 3:00 a.m. Her records also indicated that she had called a taxi company at least four times that evening. A.T.'s cell phone records placed her in the Chauncey Village area until approximately 3:00 a.m., at which point the calls that were made to her were forwarded to her voicemail.

Stidham testified that he had a consensual sexual encounter in his Jeep with a woman he had met outside of Harry's bar. Stidham claimed that the woman performed fellatio and that he ejaculated on her hand. Stidham also claimed that the woman had left her camera with him. Stidham then alleged that he did not have any further contact with the woman that evening.

During closing arguments, Stidham alleged that he was not the individual who picked up R.M. and A.T. Stidham further claimed that he had not committed confinement because R.M. and A.T. had voluntarily entered the vehicle. Finally, Stidham alleged that he did not commit rape because he did not have sexual intercourse with A.T. Rather, Stidham claimed that in light of A.T.'s "flirtatious behavior" that evening, she likely had sex with someone other than him. Tr. p. 436-37.

8

At the conclusion of the three-day jury trial, Stidham was found guilty of Counts I, II, IV, V, VII, and acquitted of Counts III and VI. At a subsequent sentencing hearing, the trial court determined that the confinement count alleged in Count II merged with the rape charge as alleged in Count VII. After finding that the aggravating factors outweighed the mitigating circumstances, the trial court sentenced Stidham to an aggregate term of twenty-three and one-half years to be executed in the Indiana Department of Corrections (DOC). Stidham now appeals.

## DISCUSSION AND DECISION

### I. Addition of Rape Charge

Stidham first claims that his rape conviction must be set aside because the trial court erred in allowing the State to file this charge just before trial. Stidham argues that this late filing prejudiced his substantial rights and that he should not have been placed in the position of choosing between his right to a speedy trial, and "choosing between a continuance so that an adequate defense could be prepared." Appellant's Br. p. 11.

In resolving this issue, we initially observe that Indiana Code section 35-34-1-5(b) provides in relevant part that

> The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time . . . before the commencement of trial . . . if the amendment does not prejudice the substantial rights of the defendant.

A defendant's substantial rights include the right to sufficient notice and an opportunity to be heard regarding the charge. Brown v. State, 912 N.E.2d 881, 890 (Ind.

9

Ct. App. 2009). Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges. Suding v. State, 945 N.E.2d 731, 735–36 (Ind. Ct. App. 2011), trans. denied. A defendant's substantial rights are not prejudiced if: (1) a defense under the original information would be equally available after the amendment, and (2) the defendant's evidence would apply equally to the information in either form. Brown, 912 N.E.2d at 890. Our Supreme Court has also explained that an amendment is of substance if it is essential to making a valid charge of the crime. McIntyre v. State, 717 N.E.2d 114, 125-26 (Ind. 1999).

We review a trial court's ruling on a motion to amend under an abuse of discretion standard. Hilliard v. Jacobs, 927 N.E.2d 393, 398 (Ind. Ct. App. 2010), trans. denied. The trial court will be found to have abused its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it. Iqbal v. State, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004).

However, we also note that a defendant's failure to request a continuance after a trial court permits a pre-trial substantive amendment to the charging information over the defendant's objection results in waiver. Wilson v. State, 931 N.E.2d 914, 917 (Ind. Ct. App. 2010), tans. denied. In Wilson, we explained that

> [Haymaker v. State, 667 N.E.2d 1113 (Ind.1996) and Daniel v. State, 526 N.E.2d 1157 (Ind.1988)] . . . provide that in cases where the court is faced with the question of whether an amendment to the charging information that was filed prior to trial prejudices a defendant' s substantial rights, a defendant waives his right to seek appellate review of the propriety of a trial court's decision to permit the amendment if the defendant fails to request a continuance after his objection to the amendment is overruled. Haymaker and Daniel are part of the long line of cases

10

that support this proposition, which originated with <u>Riley v. State</u>, 506 N.E.2d 476 (Ind. 1987).

In <u>Riley</u>, the State filed a motion to amend the charging information four days before the defendant's trial was scheduled to begin. 506 N.E.2d at 478. The defendant objected, claiming that the proposed amendment was one of substance that would require him to alter his prepared defense. <u>Id.</u> The trial court granted the State's motion over defendant's objection. <u>Id.</u> On review, the Indiana Supreme Court held that the defendant waived his right to appellate review of the trial court's order by failing to "avail himself of the statutory continuance available to allow 'adequate opportunity to prepare his defense.' " <u>Id.</u>

In this case, as in <u>Wilson</u>, Stidham was afforded the "opportunity to request a continuance for the purpose of giving himself the opportunity to prepare his defense after the trial court allowed the State to amend the charging information over his objection but chose not to pursue that course." <u>Id.</u>

As noted above, the State, after learning that Stidham admitted that he had engaged in sexual intercourse with one of his victims, filed a motion to charge him with class B felony rape of A.T. on September 14, 2012. During the September 17, 2012, hearing on this matter, Stidham acknowledged that he would be entitled to a continuance if the trial court granted the State's motion to add the rape charge. Supp. Tr. p. 18. However, during a subsequent hearing on September 24, 2012, Stidham specifically stated that he did not want a continuance and desired to proceed to trial. Supp. Tr. p. 34. As a result, Stidham has waived this claim of error.

Moreover, we disagree with Stidham's contention that the amendment placed him in the situation of having to elect between the right to a speedy trial and his right to an adequate defense. As our Supreme Court observed in <u>Miller v. State</u>, defendants in

11

similar positions are not prejudiced because they can still request a continuance and re-assert their demand for a speedy trial with respect to the new trial date. 563 N.E.2d 578, 582 (Ind. 1990).

Waiver notwithstanding, we cannot agree that the trial court erred in allowing the amendment because Stidham has not shown how he was substantially prejudiced. These substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge. Jones v. State, 863 N.E.2d 333, 338 (Ind. Ct. App. 2007). If the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights. Nunley v. State, 995 N.E.2d 718, 723 (Ind. Ct. App. 2013). Here, the State originally charged Stidham with criminal conduct of a sexual nature that involved multiple victims. Appellant's App. p. 29-40. The State charged that Stidham lured the women into his vehicle and engaged in sexual acts with them. Id. at 29-40. During the bond hearing that was conducted twenty days after the initial charge, the State informed the trial court of Stidham's criminal history. Tr. p. 18-20. At that hearing, the deputy prosecutor described Stidham's "pattern" that involved sodomizing or raping women. Id. In short, Stidham knew that the charges against him were of a sexual nature that involved both A.T. and R.M.

Also, as discussed above, Stidham admitted to Kerchoff several days after the attack that he had sexual intercourse with one of the women he had picked up from the Lafayette bar. Tr. p. 285-86. The State's discovery disclosures dated July 27, August 15,

12

and August 31, gave Stidham reason to believe that the State knew—or would learn—that he engaged in sexual intercourse with A.T.

Stidham's defense was that he was not the man who attacked A.T. or R.M., and that his encounters with them were consensual. Tr. p. 429-30, 436-37. As discussed above, Stidham alleged that A.T. entered his SUV willingly, performed fellatio on him, and left her camera with him. However, during the proceedings, Stidham knew that his DNA was found on A.T.'s buttocks. That said, even if Stidham had not been charged with raping A.T., his defense would have been the same—mistaken identity and consent. Moreover, the fact that Stidham chose not to seek a continuance is proof that the additional charge did not prejudice his substantial rights to mount a defense. Therefore, Stidham has failed to show that the rape charge affected any particular defense, and it did not change his position. Thus, we cannot say that Stidham has established that his substantial rights were violated. Given these circumstances, Stidham had a reasonable opportunity to prepare for and defend against the rape, and the trial court did not err in permitting the State to add this charge.

## II. Sufficiency of the Evidence—Rape

Stidham argues that the State failed to present sufficient evidence of rape because A.T. had no recollection of having sexual intercourse or of being so impaired that she was unable to consent to sexual intercourse. Stidham claims that at most, "the State's evidence demonstrated that a rape <u>might</u> have occurred." Appellant's Br. p. 12 (emphasis added).

13

When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Henley v. State, 881 N.E.2d 639, 652 (Ind. 2008). We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. Id. We will affirm a conviction if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

Indiana Code section 35-42-4-1 provides that

[A] person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when . . . the other person is unaware that the sexual intercourse is occurring . . . commits rape, a class B felony.

As discussed above, Stidham admitted to Kerkhoff that he picked up two women from a bar and had sexual intercourse with one of them. Tr. p. 285-86. R.M. testified that she and A.T. entered a vehicle that she thought was a taxi cab. Id. at 69, 86. R.M. further testified that she was thrown from the vehicle, and that the vehicle fled with A.T. "passed out" in the back seat. Id. at 86.

A medical examination of A.T. revealed that she suffered vaginal injuries that were consistent with nonconsensual sexual intercourse. Id. at 209, 224. As noted above, Stidham's DNA matched what was recovered from A.T.'s right buttocks. Id. at 26-30. Stidham admitted to having sexual intercourse, and the medical examination supports a finding that intercourse occurred. Id. at 209, 224. This evidence permits the jury to

14

conclude that R.M. and A.T. were the two women who entered Stidham's vehicle and that Stidham had sexual intercourse with A.T.

The evidence further established that A.T. was unaware that sexual intercourse was occurring. R.M. testified that A.T. was severely intoxicated and that she "passed out" shortly after she entered Stidham's vehicle. Tr. p. 86, 120. A.T. testified that she had no recollection of any events that occurred that evening after consuming four or five drinks. A.T. also did not remember entering Stidham's vehicle, and her next memory was waking up outside the Speedway gas station and not knowing where she was. Id. at 142-43, 152-53. A.T. denied that she had sexual intercourse with Stidham and stated that she was unaware that Stidham, indeed, had sexual intercourse with her.

This evidence permitted the jury to conclude that Stidham had raped A.T. It is apparent that Stidham's arguments amount to a request for us to reweigh the evidence, an invitation that we decline. Thus, we affirm Stidham's rape conviction.

### III.  Sufficiency of the Evidence—Confinement

Stidham next maintains that his conviction for confinement must be set aside. Specifically, Stidham argues that the conviction cannot stand because A.T. was not able to recount any of the events where the confinement allegedly occurred. Although A.T. voluntarily entered the vehicle that Stidham allegedly operated, he suggests that there is no evidence that he confined A.T. without her consent, or removed her from one place to another by force or threat of force.

Indiana Code section 35-42-3-3 provides in relevant part that

15

A person who knowingly or intentionally:

> (1) Confines another person without the other person's consent; or
>
> (2) Removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another;

commits criminal confinement . . . a Class C felony . . . if it is committed by using a vehicle.

In resolving this issue, this court has determined that "to prove confinement beyond the main crime charged, there must be something more than the act necessary to effectuate the crime." Cunningham v. State, 870 N.E.2d 552, 553 (Ind. Ct. App. 2007). Although Stidham challenges the confinement conviction and the six-year sentence that the trial court originally sought to impose with regard to A.T., it is apparent that the trial court agreed with Stidham's argument in light of the sentencing order, abstract of judgment, and Chronological Case Summary (CCS), which reflect that the confinement conviction and rape convictions were merged. In other words, no conviction or sentence was imposed on the confinement count involving A.T., and Stidham has already prevailed on that claim. Appellant's App. p. 5, 54, 63.

We note that the trial court specifically subtracted the six-year sentence that had been originally imposed for the confinement of A.T. when the twenty-three and one-half-year sentence was announced. Id. Therefore, because the trial court indeed vacated that conviction and sentence, we need not address the merits of Stidham's contentions that the evidence did not support his conviction for the confinement of A.T.

16

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.